UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-165-GWU

JAMES E. SUTHERLAND,                                          PLAINTIFF,

VS.                           **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                              DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled.  If no, proceed to Step 2.
     See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)? If yes, proceed to Step 3.  If no, the
     claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities?  If yes, proceed to

1

Sutherland

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

Sutherland

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.   20 C.F.R. Section 404.1529 (1991).   However, in evaluating a claimant's allegations of disabling pain:

3

Sutherland

First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Sutherland

or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id</u>. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Sutherland

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency

6

Sutherland

may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d

279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the

Commissioner's decision may be produced through reliance on this expert testimony

only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments.   Varley   v. Secretary of Health and Human

Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, James E. Sutherland, was found by an Administrative Law Judge

(ALJ) to have "severe" impairments consisting of degenerative disc disease,

hypertension, anxiety, and a personality disorder.  (Tr. 20).  Nevertheless, based in

part on the testimony of a vocational expert (VE), the ALJ determined that Mr.

Sutherland retained the residual functional capacity to perform a significant number

of jobs existing in the economy and, therefore, was not entitled to benefits.  (Tr. 21-

4).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of

Mr. Sutherland's age, education, and work experience could perform any jobs if he

were limited to "medium" level work, and also had the following non-exertional

impairments.  (Tr. 49).  He: (1) could "frequently" climb, balance, stoop, kneel,

crouch and crawl; (2) would have moderate difficulties maintaining social functioning

and concentration; (3) needed to avoid frequent interaction with the general public;

Sutherland

and (4) was able to understand, remember, and carry out simple tasks.  (Id.).  The VE responded that there were jobs such a person could perform, and proceeded to give examples at the medium, light, and sedentary levels and the numbers in which they existed in the state and national economies.  (Tr. 49-50).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

Mr. Sutherland alleged disability due to arthritis in his back and knees, depression, and high blood pressure.  (Tr. 109).  Although office notes from treating physicians were submitted, particularly, Dr. Bernard Moses and his associates, including Dr. India Van Bebber, reflecting treatment for complaints of back pain, high blood pressure, and anxiety (e.g. Tr. 228-47), no treating source gave an opinion regarding functional restrictions or opined that the plaintiff was unable to work. Although Dr. Moses prescribed pain medications such as Lorcet for what he diagnosed as a chronic lumbar strain (e.g., Tr. 229), when Dr. Van Bebber obtained MRI tests of the plaintiff's thoracic and lumbar spines in March, 2004, they showed only mild degenerative disc changes.  (Tr. 351-2).

Mr. Sutherland underwent consultative examinations by Dr. Tony Mancuso in January, 2004 and by Dr. David Muffly, an orthopedist, in September, 2005.

Dr. Mancuso found almost no abnormalities on examination.  (Tr. 220-22). At one point he noted a reduced grip in the plaintiff's nondominant left-hand, but later

8

Sutherland

described Mr. Sutherland as having "normal grip strength."  (Tr. 222).  He obtained a pulmonary function test showing reportedly normal results (Tr. 224) and also reviewed lumbosacral spine x-rays which showed no fractures, good alignment, and some osteophytes  (Tr. 223).  Dr. Mancuso concluded that there was no physical evidence for any restriction.

Dr. Muffly, by contrast, found that the plaintiff had a reduced grip strength on the right, but felt that it was due to poor effort.  (Tr. 374).  Despite Mr. Sutherland's complaints of back pain, and the fact that he was wearing a right knee brace, a lumbar brace, and neoprene sleeves on his elbows, complaints of elbow and knee pain as well as back pain, Dr. Muffly observed that he was able to remove his shoes and socks without difficulty, change position without significant difficulty, walk on his toes, and fully squat and rise.  (Tr. 375-6).  There were no abnormalities of reflexes, strength, or sensation, and the right knee examination was normal.  (Tr. 376).  The only abnormalities found were "minimum tenderness" of the elbows and "vague tenderness" of the lumbar spine.  Dr. Muffly reviewed the MRIs obtained by Dr. Van Bebber, and agreed that they showed degenerative disc disease but no disc herniation.  (Tr. 376-7). Dr. Muffly diagnosed thoracic and lumbar degenerative disc disease, and opined that Mr. Sutherland would be limited to lifting 25 pounds occasionally and 20 pounds frequently, with pushing and pulling within these weight limits, could stand and walk about six hours in an eight-hour day, would have no

9

Sutherland

sitting limitations, could never climb, could occasionally balance, kneel, crouch, crawl, and stoop, and should have limited exposure to vibration. (Tr. 377, 380-3).

The ALJ stated that in his opinion Dr. Muffly's examination did not fully support these restrictions and he would give Dr. Muffly's report "reduced credibility." (Tr. 21). On appeal, the plaintiff challenges the failure to give Dr. Muffly's restrictions to the VE, but as a one-time examiner, his opinion was not entitled to greater deference than that of the other one-time examiner, Dr. Mancuso, who found no limitations. Dr. Muffly did have the benefit of a review of MRI reports not available to Dr. Mancuso, but the MRIs showed only "mild" degenerative disc disease, which was generally consistent with the "osteophytes" shown on the x-rays available to Dr. Mancuso. Under the circumstances, the ALJ could reasonably have relied on the opinion of Dr. Mancuso and, thus, any physical restrictions he did give were essentially gratuitous.

The plaintiff also points out that the hypothetical question contained no reference to avoiding vibrations, although the hearing decision specifically found that he was "precluded from vibrations." (Tr. 21). The Commissioner responds that at least some of the jobs identified by the VE are described in the Dictionary of Occupational Titles (DOT) as not being subject to vibrations, such as sedentary table worker, DOT Section 739.687-182, sedentary addressing clerk, DOT Section 209.587-010, and light laundry folder, DOT Section 369.687-018. A remand on this

10

Sutherland

point, therefore, is unnecessary, particularly in view of the fact that the restriction against vibrations was gratuitous.

The plaintiff also contends that it was error to reject statements by an examining psychologist, Pamela Starkey, who concluded that Mr. Sutherland's ability to relate to people was "likely significantly impaired," and that he was "likely to have significant difficulty dealing with the normal pressures found in a day-to-day work setting." (Tr. 217-18).  These conclusions, however, appeared to be at odds with the report of Dr. John Schremly, a psychiatrist at the Comprehensive Care Center, who examined Mr. Sutherland in December, 2003 and listed his impressions as "mild" post traumatic stress disorder and anxiety disorder, with a current Global Assessment Of Functioning (GAF) score of 60.  (Tr. 338-9).  A GAF score of 60 is at the high end of a scale reflecting "moderate" symptoms.  <u>Diagnostic and Statistical Manual of Mental Disorders</u> (Fourth Edition-Text Revision), p. 34. Mr. Sutherland apparently discontinued treatment after early 2004, and was terminated from treatment with the same diagnoses and GAF score in May, 2005.  (Tr. 324-33). While Dr. Starkey was the only examining mental health expert to offer an opinion apart from a GAF score, her report was reviewed by state agency psychologists.  Dr. Jane Brake opined that Dr. Starkey's opinion should be given little weight because it was not consistent with the plaintiff's history, observations, or the objective findings.  (Tr. 284).  Another state agency psychologist, Dr. Ed Ross, agreed with

11

Sutherland

this rationale.  (Tr. 289).  Moreover, the court notes that Dr. Starkey herself assigned a GAF of 54 (Tr. 217), also in the range of "moderate" symptoms.  All these factors gave the ALJ a sufficient basis to discount the opinion of Dr. Starkey.[1]

The decision will be affirmed.

This the 9th day of February, 2007.

**Signed By:**

*G. Wix Unthank*

**United States Senior Judge**

---

[1]The plaintiff does not make an argument regarding the specific functional restrictions given by the state agency sources. (Tr. 283-4, 287-8).

12